## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | |
|---|---|
| In re:<br><br>Samuel Aaron Laurion and<br>Heather Renee Laurion,<br><br>      Debtors. | Chapter 7<br><br>Case No. 24-20521 (JJT) |
| Samuel Aaron Laurion,<br><br>      Plaintiff,<br><br>v.<br><br>CorePlus Federal Credit Union,<br><br>      Defendant. | Adv. P. No. 24-02018 (JJT)<br><br>Re: ECF Nos. 1, 12, 19, 20, 22, 23 |

## MEMORANDUM OF DECISION AND
## POSTTRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

<u>Appearances</u>
Samuel Aaron Laurion
*Pro se Debtor–Plaintiff*

David A. Corbett
Litchfield Cavo LLP
82 Hopmeadow Street, Suite 210
Simsbury, CT 06089
*Counsel for Defendant CorePlus Federal Credit Union*

This Adversary Proceeding was brought by the Debtor, Samuel Aaron Laurion,[1] against CorePlus Federal Credit Union on November 21, 2024, seeking sanctions for alleged violations of the discharge injunction (Complaint, ECF No. 1). *See* 11 U.S.C. § 524(a)(2). CorePlus answered the Complaint on January 13, 2025, and additionally raised the affirmative defense of unclean hands (Answer, ECF No. 12). A trial was then held on January 23, 2025.[2] The parties then filed posttrial briefs (ECF Nos. 22, 23). Based upon the facts presented, the Court finds that the Debtor has proven a violation of the discharge injunction, but that such violation was merely a technical violation for which the Debtor suffered minimal, if any, cognizable damages. Therefore, the Court finds for the Debtor but awards only nominal damages.

1. Findings of Fact[3]

    1.1 Procedural History

The Debtor and Heather Laurion filed the underlying Chapter 7 case on June 5, 2024 (MC ECF No. 1). After the Chapter 7 Trustee filed a Report of No Distribution on August 28, 2024 (MC ECF No. 27), the Debtors received a discharge on September 18, 2024 (MC ECF No. 31).

---

[1] All references to the Debtor in this opinion are to Samuel Laurion alone.
[2] The audio of the trial is available at ECF No. 17. The exhibits are available at ECF Nos. 19 and 20.
[3] Earlier case law stated that a debtor had to prove a violation of the discharge injunction by clear and convincing evidence. *See, e.g., Bates v. CitiMortgage, Inc.*, 550 B.R. 12, 17 (D.N.H. 2016). *Taggart v. Lorenzen*, 587 U.S. 554, 565 (2019), discussed below states only that "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." That standard makes no mention of the appropriate burden of proof (and there appears to be no binding case law otherwise). The Court thus makes the following findings of fact under the preponderance of the evidence standard.

Two days after the discharge order entered, the Debtor filed multiple Motions to Avoid Liens (MC ECF Nos. 32, 33, 34), including one against CorePlus. In that motion, the Debtor sought to avoid CorePlus's security interest in a 2016 Ram 1500 (the Truck) based upon his discharge and his alleged exemption. After notice and a hearing, the Court denied the motion (ECF No. 63) on October 29, 2024, because CorePlus's lien was consensual, the Debtor had not claimed any pertinent exemption on his Schedule C, and the Debtor had provided no evidence of the Truck's value in connection with that motion.[4]

The Debtor then filed the instant Adversary Proceeding on November 21, 2024.[5] The Complaint alleges that, after the entry of discharge in the main case, CorePlus has demanded payment in violation of the discharge injunction and has signaled its intent to repossess the Truck through its filing of a motion for relief from stay. Specifically, the Debtor alleges that a statement from CorePlus, which the Debtor viewed—on his own initiative—by accessing CorePlus's online portal, lacks a customary bankruptcy non-collection disclaimer, making it ostensibly inconsistent with his discharge.[6] For these alleged violations, the Debtor seeks a cessation of collection activities, an apology, $10,000 for emotional distress, written

---

[4] After denying the motion, CorePlus moved for relief from the automatic stay to repossess the Truck. Due to the interrelated nature of that motion and this Adversary Proceeding, the Court has held off on issuing a decision on CorePlus's motion. In a separate order entered substantially contemporaneously with this decision, the Court also grants CorePlus's motion.
[5] The Debtor styled the Complaint as a Motion for Sanctions for Violation of the Discharge Injunction as to CorePlus Federal Credit Union. Given the nature of the relief sought, the Court construed it as an Adversary Proceeding.
[6] As discussed further below, a bankruptcy disclaimer usually takes the form of a declaration that the creditor acknowledges the Debtor's bankruptcy case or discharge and that the statement is for informational purposes only.

confirmation that the underlying debt has been discharged, and a release of CorePlus's lien on the Truck.

CorePlus filed its Answer on January 13, 2025. Within, CorePlus admits that it seeks to repossess the Truck *after* stay relief. CorePlus acknowledged that there is no bankruptcy disclaimer on the pertinent billing statement on its online portal, and that it had knowledge of the discharge, but it otherwise denies the Debtor's allegations that it possessed sufficient intent to violate the discharge injunction or that there was any cognizable harm. As an affirmative defense, CorePlus further alleges that the Debtor's unclean hands bar any relief.

The Court held a hearing in the main case on January 15, 2025, at which it indicated that it would like to try this matter quickly given the limited evidence required. That same day, the Court issued its Final Pretrial Order (ECF No. 13) so as to expedite the resolution of this matter.

The trial in this Adversary Proceeding was held on January 23, 2025, at which the parties' arguments and evidence were presented to this Court. In his affirmative case, the Debtor himself testified. The Court admitted into evidence the loan statement dated October 11, 2024 (Ex. 2) but declined to admit the Debtor's affidavit (Ex. 1). In its defense, CorePlus presented the testimony of Jane Sacrey. The Court also admitted into evidence a letter to the Debtor dated May 31, 2024 (Ex. B), a delinquency notice dated June 27, 2024 (Ex. E), and loan information from CorePlus's internal website dated October 11, 2024 (Ex. F), the last of which was not accessed by the Debtor.

1.2    Testimony

The Debtor credibly testified concerning the circumstances under which he reviewed the October 11, 2024 loan statement. CorePlus did not mail the statement to him or email it directly to him, but instead sent an email to him stating that the loan statement was available for his review on CorePlus's website. The Debtor then chose to view the statement online on October 11, 2024. After he later contacted CorePlus's attorney, the Debtor's access to the website was halted, but he continued to receive emails stating that a statement was available. The Debtor made no effort to discern in dialogue with CorePlus whether the statement was merely informational, mistaken, or to be read as a demand for payment.

The Debtor found disturbing a part on the loan statement stating "Questions About Your Bill? Give us a call. We're here to help!" He declined to do so. The statement, admittedly, made no mention of the Debtor's bankruptcy or that the statement was merely informational.[7]

When asked by the Court about how he has been damaged, the Debtor stated that the Truck is his primary means for getting to his job and that he was distressed as he would have a tough time post-bankruptcy obtaining another vehicle. In effect, he was allegedly stressed by the CorePlus statement. He also claimed that his family has been under tremendous stress concerning the possibility of losing the Truck.[8]

---

[7] The Debtor testified that, based upon his experience in a past bankruptcy case, he did not want to reaffirm the debt on the Truck, instead wanting to negotiate a discount with CorePlus.
[8] The Debtor has seemingly failed to recognize that such is a consequence of his contractual defaults and decision to file bankruptcy as opposed to the effect of the billing statements.

On cross examination, the Debtor emphasized that he was surprised to be receiving the same statements he had received prior to bankruptcy. He admitted to receiving no phone calls or other communications other than the emails stating that statements were available or that CorePlus was in pursuit of collection.[9]

At the conclusion of the Debtor's case, CorePlus orally moved for a directed verdict under Rules 41(b) and 50 of the Federal Rules of Civil Procedure.[10] The Court denied the motion on the record.

In its defense, CorePlus thereafter presented the testimony of Jane Sacrey, its credit and recovery manager who was familiar with the Debtor's loan on the Truck. She credibly testified that, upon the Debtor's bankruptcy, she caused CorePlus to stop sending mail to the Debtor.[11] She was also familiar with CorePlus sending the Debtor a letter prior to his bankruptcy (Ex. B), which informed the Debtor that his account was past due with regards to the Truck loan. Based upon

---

[9] Eventually, the Debtor's access to CorePlus's website was disabled; however, the Debtor continued to get emails informing him that his statements were available.

[10] Rule 41(b) concerns involuntary dismissals based upon a failure to prosecute or comply with the rules or a court order. Rule 50 concerns judgment as a matter of law in a jury trial. Neither is applicable here. The appropriate rule to cite would have been Rule 52(c), which pertains to judgment on partial findings. That rule provides, in part:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence.

The Court's decision to deny CorePlus's oral motion is consistent with this rule.

[11] Exhibit E, a Delinquency Notice dated June 27, 2024, showed "** DO NOT MAIL **" above the Debtor's name and address, further corroborating this fact. Likewise, a system-generated loan information regarding the Truck dated October 11, 2024—the same date as the email sent to the Debtor—was admitted as Exhibit F and showed the same admonition above the Debtor's name and address.

her testimony, the Court concludes that no bills or ostensible demands were physically mailed to the Debtor postpetition.

As for email, Ms. Sacrey credibly testified that a customery member of CorePlus would need to opt in to receive emails from CorePlus regarding the online availability of statements, with those emails being automated.[12] On cross-examination, Ms. Sacrey admitted that the Debtor's login credentials for the CorePlus website were only disabled in October 2024, after he received the October 11, 2024 email informing him that his statement was available to view online.

2. Conclusions of Law

2.1  Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over these proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(O). To the extent that the claims asserted in this Adversary Proceeding are related to or *Stern* claims,[13] the Court construes the parties' silence in the Complaint and Answer as implied consent to this Court exercising final adjudicatory authority. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 683–85 (2015); Fed. R. Bankr. P. 7008(a) ("In an adversary proceeding before a

---

[12] The implication of this, of course, is that the Debtor opted into receiving email notifications.
[13] *See generally Stern v. Marshall*, 564 U.S. 462 (2011).

bankruptcy court, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy court."); Fed. R. Bankr. P. 7012(b) ("A responsive pleading shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court.").

2.2 Discussion

Under 11 U.S.C. § 524(a): "A discharge in a case under this title— . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" Section 524(a)(2) "extends to all forms of collection activity, including letters, phone calls, threats of criminal proceedings or other adverse actions intended to bring about repayment." 4 Collier on Bankruptcy ¶ 524.02[2] (16th ed. 2025). "Like the automatic stay of section 362(a), the discharge injunction is the equivalent of a court order. Therefore, a violation of the injunction may be sanctioned as contempt of court." *Id.* (footnote omitted).[14]

The Chapter 7 discharge relieves the Debtor of his *in personam* liability, but

> As the Supreme Court held in *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992), Chapter 7 does not provide for stripping of in rem liens. Liens are therefore said to "pass through" or "survive" Chapter 7 bankruptcy. *See Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991). The holder of the lien will continue to have recourse for the underlying debt in the collateral itself, despite the discharge of the debtor's personal liability,

---

[14] Civil contempt is imposed under 11 U.S.C. § 105 and requires a finding that there is no fair ground of doubt regarding the wrongfulness of the violator's conduct. *Taggart v. Lorenzen*, 587 U.S. 554, 560–61 (2019).

8

which prevents the creditor from recovering against any other of the debtor's assets.

*Curwen v. Whiton*, 557 B.R. 39, 42 (D. Conn. 2016). "When a secured creditor retains a lien on the debtor's property after the discharge, courts have held that it is not per se improper for the secured creditor to contact a debtor to send payment coupons, determine whether payments will be made on the secured debt, or inform the debtor of a possible foreclosure or repossession, as long as it is clear the creditor is not attempting to collect the debt as a personal liability." 4 Collier on Bankruptcy ¶ 524.02[2][b].

The questions presented to the Court here are: (1) whether the October 11, 2024 email sent to the Debtor and his reviewing of the billing statement on the CorePlus website were an impermissible attempt by CorePlus to collect the debt owed on the Truck as a personal liability and, if so, (2) whether there was a fair ground of doubt concerning whether CorePlus's actions were prohibited, and (3) whether and to what extent the Debtor has been damaged.

Here, there is no dispute that CorePlus, through its automated systems, sent an email to the Debtor informing him that an account statement was available and that such took place after the Debtor received his discharge. On CorePlus's website, the account statement had no bankruptcy disclaimer because it made no mention of the Debtor's bankruptcy, or that it was merely for "Informational Purposes"; it simply asked him to pay $1,748.88 by November 7, 2024. CorePlus effectively conceded that the account statement appeared no different than those that the Debtor received prior to his filing the underlying Chapter 7 case. Although it was

9

not improper for CorePlus to provide the account information to the Debtor (for instance, to address the secured claim, his cure amount, or redemption costs), doing so without differentiating the statement from prepetition statements is problematic. Prepetition, the account statements were clear attempts to collect a debt. Absent a clear statement that the account statement was for "Informational Purposes only," the Court finds that the post-discharge dispatch of this account statement was an attempt to collect a debt. The Court therefore finds that CorePlus violated the discharge injunction.

By reference to cautionary practices in mortgage lending, the Court concludes that lenders have developed and are aware of methods to effectively communicate with debtors post-discharge. In the residential mortgage loan context, Regulation Z requires that any periodic statements sent to debtors who have received a discharge provide a notice that acknowledges the discharge and states that the periodic statement is for informational purposes only. 12 C.F.R. § 1026.41(f)(2). Although Regulation Z does not require periodic statements for car loans, the lending industry knows that it provides persuasive guidance on what may be an attempt to collect a debt in that context and what is merely informational. Given the robust jurisprudence available on such informational statements within bankruptcy case law, the Court finds that there is no fair ground of doubt that CorePlus technically violated the discharge injunction and simply should have taken measures to prevent a miscommunication. *See Taggart*, 587 U.S. at 560–61.

As far as the content of the statement goes, however, the October 11, 2024 account statement provided the Debtor with the exact amount he needed to provide CorePlus to avoid having it exercise its right of repossession.[15] Thus, although CorePlus did not have to provide the account statement, its having done so made the Debtor better informed and did not otherwise harm him—especially because he did not pay anything after receiving it—and CorePlus did not otherwise dispatch explicit demands, threats, or harassment. That the CorePlus communication was limited to this single instance further demonstrates that the Debtor has not been materially damaged.[16]

As for the Debtor's claimed emotional distress, the Court finds that he has not met his burden of proof. In that regard, the Debtor must prove, among other things: causation and severe emotional distress. *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 442–44, 815 A.2d 119, 126–27 (2003). The Court simply does not credit the Debtor's testimony that he has endured emotional distress due to CorePlus's actions uncorroborated by relevant proof from other sources, such as a physician's testimony or proof that the Debtor's condition necessitated medical care.[17]

---

[15] By the time of the trial in this adversary proceeding, the Debtor acknowledged CorePlus's lien rights in the Truck, but there have been times throughout these proceedings (including the main case and the separate adversary proceeding against PHH Mortgage Corporation) where the Debtor has shown that he fundamentally misunderstands the nature of the bankruptcy discharge, consensual liens (and secured credit, generally), and claiming impairment of exemptions.

[16] The Court does not credit the Debtor's testimony that there is ongoing harassment or attempts to collect a discharged debt because he continues to receive emails stating that a statement is available that he cannot access. The Court likewise does not give any weight to the Debtor's statement that CorePlus's actions have harmed his family. The Debtor was the sole obligor on the note for the Truck and is the sole plaintiff in this Adversary Proceeding—in other words, he has no standing to assert that third-party harm. Further, he presented no expert or other recognized evidence of his medical or mental health harms, except for his self-serving and exaggerated statements.

[17] The fact that the Debtor has sought relief against two other lenders also leads the Court to find that the Debtor has not quantified what amount of any emotional distress is due to CorePlus's

11

Nevertheless, a discharge injunction violation happened, albeit minor and technical. In situations such as these, courts have awarded nominal damages for violations that have been both willful and not willful. Based upon the passive nature of what CorePlus informed this Debtor (i.e., the availability of his account statement on its online portal through an automated email), the Court finds that CorePlus's violation was not willful. Moreover, being limited to this single notice, the Court likewise finds that any violation was not egregious. In *Covington v. Ill. Am. Water Co. (In re Covington)*, No. 22-ap-00134, 2023 WL 3573751 (Bankr. N.D. Ill. May 19, 2023), the court awarded $100 in nominal damages to a debtor who alleged discharge violations by his water company under similar circumstances. The court there rejected the debtor's emotional distress claim and denied punitive damages due to the lack of egregious conduct.[18]

Accordingly, the Court finds that $100 in nominal damages[19] is adequate to address the discharge injunction violation here, coupled with an affirmative order directing CorePlus to either establish institutional safeguards to avoid sending out similar emails to discharged debtors, or to include the disclaimer like that used in

---

actions, his other lenders, or the general fact that he is in financial distress in a bankruptcy. His calculus seems to be to find arguments that avoid payment rather than address his financial realities.

[18] Unlike *In re Perviz*, 302 B.R. 357 (Bankr. N.D. Ohio 2003), which the Debtor cited in his papers, this case does not involve an alleged stay violation—let alone a willful one—so the Court is under no obligation to award costs, attorney fees, or punitive damages. *See* 11 U.S.C. § 362(k)(1). Instead, and as noted above, the Court exercises its equitable powers under § 105. Also cited by the Debtor was *In re Pratt*, 462 F.3d 14 (1st Cir. 2006), which is also distinguishable because the vehicle in question there was ostensibly worthless. Here, the Truck has value to both the Debtor and CorePlus and, thus, there is no concern that CorePlus is coercing the Debtor to collect its debt against worthless collateral.

[19] The Court notes that, during the pendency of this case and related disputes, the Debtor has had nine months of use of the Truck without any payments.

12

mortgage statements. The Debtor's requests for further relief are disproportionate to the alleged violation and unjustifiable on the facts and the law.

3   Conclusion

For the foregoing reasons, the Court finds for the Debtor in the amount of $100. It declines to afford the relief otherwise requested in the Complaint.[20] A separate judgment consistent with this Memorandum of Decision will enter upon the docket.

IT IS SO ORDERED at Hartford, Connecticut this 14th day of March 2025.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[20] For the absence of doubt, the Court addresses the enumerated demands in the Debtor's Complaint as follows:
1. The Debtor's demand for an immediate cessation of collection activities is moot because CorePlus has terminated the Debtor's access to online statements, but the Court rejects the demand to the extent that it requests that CorePlus cease any attempt to repossess the Truck.
2. The Court rejects the Debtor's request for formal acknowledgment and an apology because CorePlus has sufficiently acknowledged, in his presence, its flawed online statement.
3. The Court rejects the Debtor's request for emotional distress damages, awarding instead $100 in nominal damages.
4. The Debtor's demand for written confirmation of discharge of the Truck loan is moot by the discharge order; CorePlus also acknowledged on the record that the Debtor's *in personam* liability on the note has been discharged.
5. The Court rejects the Debtor's request for a release of the lien on the Truck for reasons stated in this case (i.e., he cannot avoid the consensual lien under 11 U.S.C. § 522 and the violation here does not support such an extraordinary remedy for a nominal harm).